**The Honorable Ronald B. Leighton**

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| **COLUMBIA MACHINE, INC.,** a Washington Corporation, <br><br> Plaintiff, <br><br> v. <br><br> **BESSER COMPANY**, a Michigan Corporation, <br><br> Defendant. | Civil Action No. 3:10-cv-05667-RBL <br><br> **DEFENDANT BESSER COMPANY'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION** <br><br> **Motion Noted for December 2, 2011** <br><br> **Oral Argument Requested** |

## INTRODUCTION

Nearly fourteen months after filing this lawsuit, Plaintiff Columbia Machine, Inc. has finally gotten around to moving the Court to enjoin additional sales of the SERVOPAC, Besser's flagship concrete products machine, which has been offered for sale around the world since 2007.[1] A preliminary injunction is a drastic and extraordinary remedy – an order commanding a defendant to cease doing what the defendant normally has a legal, moral, and natural right to do – earn a living. To be entitled to this draconian relief, Columbia must make a "clear showing" that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm if a preliminary injunction is not

---

[1] Columbia's motion for a preliminary injunction shall be referred to as the "Motion."

DEFENDANT BESSER COMPANY'S OPPOSITION TO COLUMBIA'S MOTION
FOR PRELIMINARY INJUNCTION
No. 3:10-cv-05667-RBL

Merchant & Gould P.C.
701 Fifth Avenue, Suite 4100
Seattle, WA 98104
Telephone: (206) 342-6200

granted; (3) the balance of harms tips in his favor, and (4) granting an injunction is in the public

interest.  Columbia can establish none of these factors.

Columbia cannot show a likelihood of success on the merits, because the Besser

SERVOPAC machine, and the Besser molds that run on that machine ("Besser Mold"), do not meet

several important limitations of the asserted claims. Three patents are at issue in this case: U.S.

Patent No. 5,807,591 (the '591 patent), U.S. Patent No. 6,177,039 (the '039 patent), and U.S. Patent

No. 6,352,236 (the '236 patent). Columbia has agreed to limit its case to four claims from those

patents: claim 1 of the '591 patent, claim 1 of the '039, and claims 1 and 4 of the '236 patent.  (First

Farley Declaration at ¶ 3, Doc. No. 81; Order Granting Stipulation to Limit Case to Four Claims,

Doc. No. 64).[2] Besser's SERVOPAC and Besser Mold infringe none of those claims.

Claim 1 of the '591 patent and claims 1 and 4 of the '236 patent all require that the accused

mold, here the Besser Mold, have **"alignment holes"** in the bottom facing surface of the mold's

side walls. These holes allow the mold to be mounted on alignment pins or pegs located on the

machine frame.  It is a simple method of holding or aligning the mold on the frame before the mold

is bolted to the frame during operation.[3] But the Besser Mold does not have any holes in the bottom

facing surface of its side walls. And the Besser Mold cannot therefore infringe those three claims.

Sadly, Columbia's argument on this "holes in the bottoms the side walls" limitation involves

---

[2] Because of the complexities raised by the Motion, Besser has submitted four declarations: (1) First
Declaration of Timothy Farley in Opposition to Columbia's Motion for a Preliminary Injunction ("Farley 1
Decl.") (Doc. No. 81), which deals mainly with non-infringement issues, (2) Second Declaration of Timothy
Farley ("Farley 2 Decl.") (Doc. No. 80), which deals primarily with the invalidity of claim 1 of the '039
patent, as well as other issues, (3) the Declaration of Juli Musch (Doc. No. 78), which addresses irreparable
harm, balance of harms, and public interest, and (4) the Declaration of Paul Beattie (Doc. No. 79), which
addresses the subtext of Columbia's Motion, and Columbia's implausible suggestion that Besser is somehow
responsible for Columbia's failure to file its Motion until almost 14 months after beginning this lawsuit.

[3] The First Farley Declaration has a detailed description of the technology at issue in this case to aid
the Court.  It also has detailed claim analysis.

**DEFENDANT BESSER COMPANY'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION** - 2 -
**No. 3:10-cv-05667-RBL**

Merchant & Gould P.C.
701 Fifth Avenue, Suite 4100
Seattle, WA  98104
Telephone: (206) 342-6200

pointing to a structure that is plainly not the side wall, while pretending that it is the side wall (or while ignoring the operative claim language altogether). Rarely in the annals of law has *mislabeling* been erected as an argument.

Claim 1 of the '591 patent and claims 1 and 4 of the '236 patent also require that the accused mold be **"bolted"** to the concrete products machine during operation.  The definition of "bolting" is the ordinary and customary definition: "to manually fasten using a threaded bolt, which interacts with a threaded, mated nut, a different threaded, mated object (such as a brace), or a threaded, mated hole." In the SERVOPAC, however, molds are *never* "bolted" to the machine.  Instead, the SERVOPAC has a much more sophisticated, fully-automated hydraulic clamping system.  To fasten a mold to the SERVOPAC, the operator hits a button on a touch screen, and the hydraulic clamps automatically engage. Molds are never "bolted" to the frame of the SERVOPAC.  Columbia's reply to this argument is to try to read the word "bolting" out of the claims, because Columbia knows it loses this case if it cannot ignore its own plain claim language.

Finally, claim 1 of the '039 patent requires that the feed drawer, the part of the machine that feeds concrete material into the mold, move "**vertically** to a **dispensing position** located a proper distance **above the top of the mold**." But the feed drawer in the SERVOPAC does not move *vertically* to a dispensing position above the mold (a position from which the concrete material is poured into the mold).  Instead, it moves *horizontally* to a dispensing position above the mold. Additionally, claim 1 of the '039 patent requires a device to lock the feed drawer in the dispensing position, once it has moved there vertically. Again, the SERVOPAC does not need such a lock. There is enough resistance in the jack screws that move the SERVOPAC feed drawer up and down to keep the feed drawer from falling out of vertical alignment while it moves *horizontally* back and

**DEFENDANT BESSER COMPANY'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION**                                            - 3 -
**No. 3:10-cv-05667-RBL**

Merchant & Gould P.C.
701 Fifth Avenue, Suite 4100
Seattle, WA  98104
Telephone: (206) 342-6200

forth between the concrete supply and the top of the mold.  Columbia's response to this argument is to ignore the difference between vertical and horizontal.

Claim 1 of the '039 patent is also **invalid**, since it is anticipated by at least 4 different pieces of prior art.

Finally, Columbia's arguments on irreparable harm suffer from three main defects. First, they come 14 months late. Courts routinely hold that ongoing harms cannot be irreparable if a plaintiff waits too long to seek injunctive relief. Second, they are supported by almost no competent evidence of any kind.  And third, the facts of this case uniquely make any alleged infringement fully compensable through money damages. For these reasons and the other reasons discussed below and in the four declarations submitted by Besser, Columbia's Motion should be denied.

## APPLICABLE LAW

Injunctive relief is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 129 S. Ct. 365, 375-76 (2008); *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1375 (Fed Cir. 2009). Such relief in patent cases is statutorily authorized in appropriate cases by 35 U.S.C. § 283. A plaintiff seeking an injunction must establish that it: (1) is likely to succeed on the merits; (2) is likely to suffer irreparable harm if a preliminary injunction is not granted; (3) that the balance of equities tips in his favor, and (4) that granting an injunction is in the public interest.[4]  *Id.* at 374; *accord Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc). While *granting* a preliminary injunction motion requires analysis of all four factors, a trial court

---

[4] The standards for seeking a TRO are "substantially identical" to those governing denial or grant of preliminary injunction motions.  *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

**DEFENDANT BESSER COMPANY'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION** - 4 -
**No. 3:10-cv-05667-RBL**

Merchant & Gould P.C.
701 Fifth Avenue, Suite 4100
Seattle, WA  98104
Telephone: (206) 342-6200

may *deny* such a motion based on "a patentee's failure to show any one of the four factors." *Jack Guttman, Inc. v. Kopykake Enterprises, Inc.*, 302 F.3d 1352, 1356 (Fed. Cir. 2002).

"The burden is always on the movant to show entitlement to a preliminary injunction." *Reebok Int'l, Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 555 (Fed. Cir. 1994). Furthermore, if the accused infringer can raise even a "substantial question" concerning validity, enforceability, or infringement, *the preliminary injunction should not issue. Altana Pharma AG v. Teva Pharms. USA, Inc.*, 566 F.3d 999, 1005 (Fed. Cir. 2009); *Red Bend, Ltd. v. Google, Inc.*, 2011 U.S. Dist. LEXIS 36217, at *43 (D. Mass. Mar. 21, 2011). In patent cases, Federal Circuit law governs motions for preliminary injunctions, because such motions implicate "substantive matters unique to patent law." *Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1451 n.12 (Fed. Cir. 1988).[5]

## FACTS

This case generally relates to concrete products machines or concrete product forming machines (the terms are interchangeable here) and their molds. (Farley 1 Decl. at ¶ 4). Concrete products machines are machines that produce concrete products, such as bricks, blocks, paving stones, edging stones, and other similar products. Modern versions of these machines are largely automated. (*Id.*). The machines are part of elaborate mechanical assembly lines that mix concrete material, pour the concrete material into molds, vibrate and compact that material, and strip or discharge the green (unhardened) blocks, bricks, or other products onto pallets that run along conveyors. (*Id.*).

Besser Company is an American company founded in Michigan over 110 years ago. (*Id.* at ¶ 5). Besser Company USA, created in 2009, is now responsible for production and sale of most U.S.

---

[5] Besser incorporates the parties' Joint Claim Construction Statement (Doc. No. 68) by reference and will include a copy of that submission with the judge's copy of Besser's Opposition.

**DEFENDANT BESSER COMPANY'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION** - 5 -
**No. 3:10-cv-05667-RBL**

Merchant & Gould P.C.
701 Fifth Avenue, Suite 4100
Seattle, WA 98104
Telephone: (206) 342-6200

products. (*Id.*; Musch Decl. at ¶ 2). Although Besser informed Columbia in September of 2011 that Besser Company USA was the corporation responsible for production and sale of Besser products in the United States, Columbia has made no effort to "sue the right company or to removed Besser Company from its two lawsuits." (Musch Decl. at ¶ 2). Besser's SERVOPAC machine, the machine relevant to this case, is one of Besser Company USA's newer concrete products machines. (*Id.* at ¶¶ 2-3; Farley 1 Decl. at ¶5).

The SERVOPAC is a top-flight, fully-automated machine.  (Farley 1 Decl. at ¶ 5). The machine is "far more automated and advanced than the machines contemplated in Columbia's patents.  (Musch Decl. at ¶ 6). The most interesting and important aspects of the SERVOPAC, such as the software, the electronics, and the touch screen control module are not even at issue in this case.  (Farley 1 Decl. at ¶ 5). Instead, this case mainly deals with simple technology relating to the typically box-like or rectangular mold into which the concrete material is poured to form products like bricks or paving stones. (*Id.*).

## ARGUMENT

**1.    Columbia Cannot Establish A Likelihood of Success On The Merits, Because The SERVOPAC Machine and The Besser Mold Infringe None Of The Four Asserted Claims, And Because One Or More Of Those Claims Are Invalid.**

The first of four factors that Columbia must establish is likelihood of success on the merits. *Winter*, 129 S. Ct. at 376; *Titan Tire*, 566 F.3d at 1375.  Columbia must show that it is *likely* to establish infringement at trial and is *likely* to survive any challenges to the claims. *Titan Tire*, 566 F.3d at 1376. Put another way, Columbia must show that Besser's defenses lack "substantial merit." This Court is familiar with the central doctrine of patent infringement law, the "all elements rule." Assessing infringement requires a comparison of the claim to the accused product or process.

DEFENDANT BESSER COMPANY'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION                    - 6 -
No. 3:10-cv-05667-RBL

Merchant & Gould P.C.
701 Fifth Avenue, Suite 4100
Seattle, WA  98104
Telephone: (206) 342-6200

*Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1406 (Fed. Cir. 2004); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995)(*en banc*), *aff'd,* 517 U.S. 370, 384 (1999); *see also Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

For an accused product or process to infringe a claim, it must have or practice each and every element or "limitation" set forth in that claim, whether literally or under the doctrine of equivalents – a requirement known as "the all elements rule" or "all limitations rule." *V-Formation, Inc. v. Benetton Group SpA*, 401 F.3d 1307, 1312 (Fed. Cir. 2005); *see also RF Delaware, Inc. v. Pacific Keystone Techs., Inc.*, 326 F.3d 1255, 1266 (Fed. Cir. 2003). If an accused product or process fails to meet even a single claim limitation, that product or process cannot infringe. *Id.*

**a. Columbia Cannot Establish A Likelihood of Success On The Merits Under Claim 1 Of The '591 Patent Or Claims 1 And 4 Of The '236 Patent, Because The Besser Mold Does Not Have Holes On The Bottom Facing Surface Of Its Side Walls, As Required By Those Three Claims.**

Three of the four asserted claims specifically concern how the mold assembly attaches to, or is positioned on, a concrete products machine:  claim 1 of the '591 patent and claims 1 and 4 of the '236 patent. (Farley 1 Decl. at ¶ 8). Those claims require that the side walls of an accused mold have "alignment holes" in their bottom facing surfaces.  (*Id.* at ¶¶ 8-9).  The alignment holes (small cylindrical holes) receive or mate with "alignment dowels" (cylindrical pins or pegs) on shelves of the frame to allow the mold to be aligned or positioned on the concrete products machine.  (*Id.* at ¶¶ 8-11). Because the Besser Mold does **NOT** have holes in the bottom-facing surfaces of the side walls, it cannot infringe those three claims under any reasonable construction of the terms.  (*Id.* at ¶¶ 11-18).

**DEFENDANT BESSER COMPANY'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION** - 7 -
**No. 3:10-cv-05667-RBL**

Merchant & Gould P.C.
701 Fifth Avenue, Suite 4100
Seattle, WA  98104
Telephone: (206) 342-6200

Claim 1 of the '591 patent and claims 1 and 4 of the '236 patent all have the limitations of alignment holes in the undersides of the side walls.  As discussed later, each claim likewise requires that the mold assembly be "bolted" to the frame.  For example, claim 1 of the '591 patent requires:

> [T]he **side walls** each including **alignment holes** extending up from a bottom side end for slidingly receiving **alignment dowels** extending up from the shelves thereby holding the mold assembly in a pre aligned position before **bolting the mold assembly to the shelves.**

('591 patent, claim 1) (emphases added) (*See also* '236 patent, claims 1, 4).[6] The interaction or joining of the alignment holes of the side walls with the alignment pins of the frame serves to align the mold or "mold assembly" on the frame, before the mold is bolted to the machine. (*Id.* at ¶ 10). The holes interact with or receive "alignment dowels," small cylindrical pins that protrude up from shelves that are part of the frame. By fitting the alignment holes over the pins of the frame, the mold assembly is held "in a pre-aligned position before bolting the mold assembly to the shelves." (Farley 1 Decl. at ¶ 10).

Figure 7 (in all three patents) shows a side view of an alignment pin (structure no. **101**) engaging an alignment hole in the bottom of the mold assembly's side walls.



In this figure, pin **101** protrudes up from a shelf on the frame and "mates with a corresponding hole in the bottom side of the mold assembly." (*See, e.g.*, '591 patent, Fig. 7 and col. 8, lines 38-42).

---

[6] The patents-in-suit were attached to the Complaint in this case and to the Declaration of Delfina Homen (Doc. No. 71).  The asserted claims are also attached to the First Farley Declaration and to the Beattie Declaration as **Exhibit A** in each case.  However, the relevant language in reproduced in this opposition.

DEFENDANT BESSER COMPANY'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
No. 3:10-cv-05667-RBL
- 8 -
Merchant & Gould P.C.
701 Fifth Avenue, Suite 4100
Seattle, WA  98104
Telephone: (206) 342-6200

In contrast to the molds described in the claims, the Besser Mold has *no holes of any kind* in the bottom facing surface of its side walls. (*Id.* at ¶¶ 11).  This is immediately apparent from looking at the bottom of the side walls of the Besser Mold.  Here is one such photograph:



No alignment holes in the bottom-facing surface of the side walls.

From that photograph, the Court can see that there are no alignment holes in the bottom surface of the side walls. (Farley 1 Decl. at ¶ 15 & **Exhibit C**).

Besser Company USA's Corporate Director of Engineering explains further:

[T]here are no alignment holes in the bottom facing surfaces of the Besser Mold side walls.  Indeed, there are no holes at all.  This reflects reality.  **I am very familiar with the Besser Mold, and there are, in fact, no holes of any kind in the bottom facing surfaces of the Besser Mold side walls**.  Since there are no alignment holes in the bottom surfaces of the Besser Mold side walls, there cannot be any interaction between any such holes and alignment dowels or pins on "shelves" attached to the frame of the claimed machine.  Additionally, the SERVOPAC does not have any such shelves.

(Farley 1 Decl. at ¶ 16) (emphasis in original).

There is also no dispute about which "walls" are the side walls.  Farley explains:

In the concrete products machine and mold art, there is a universal convention calling the front wall of a mold the wall that faces the front of the machine. The front of the machine, in turn, is the portion of the machine from which the concrete products emerges. The back wall is the wall that faces the back of the machine (opposite the front), and the side walls are the other two walls.  This convention is

DEFENDANT BESSER COMPANY'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION                      - 9 -
No. 3:10-cv-05667-RBL

Merchant & Gould P.C.
701 Fifth Avenue, Suite 4100
Seattle, WA  98104
Telephone: (206) 342-6200

reflected in an illustration attached to this declaration as **Exhibit B**.  I have carefully reviewed the patents-in-suit, and *they follow this convention* . . . .

(Farley 1 Decl. at ¶ 11 & **Exhibit B**) (emphasis in original).  To confirm that Mr. Farley is correct, consider Figure 7, which is described as "an isolated **side-section view** showing part of the vibration system . . . . ('591 patent, Col. 4, lines 43-44 & Fig. 7).[7]  This figure shows a side-section view of the alignment dowel or pin **101** inserted fully into the side wall of the mold assembly **86**. The side walls run parallel to the *sides* of the machine, as Farley indicates.  In contrast, Fig. 3 is a front view of the claimed machine. ('591 patent, Col. 4, lines 43-44 & Fig. 3).  The front wall of the mold would be the wall closest to the front. (Farley 1 Decl. at ¶ 11).  There is thus no dispute about which walls are the side walls.

Confronted with this argument, Columbia **points to the wrong structure**.  Exhibit E to the Delfina Homen Declaration is marked with a structure "J," which Columbia and its lawyers point to as "alignment holes" in the side walls.  (Motion at 12-13).  This is just plain wrong.  First, the structure point to is not an alignment hole but a cup that interacts with bell-shaped cones on the frame.  (Farley 1 Decl. at ¶ 15).[8]  More importantly, the "cup" is located in a completely separate structure called an **adaptor bar**. (*Id.*).  The adaptor bar is a completely separate structure; it is not part of any wall.  (*Id.*).  It is attached to the front and back walls, not to the side walls. (Farley 1 Decl. at ¶¶ 12-15).  The limitation here is not "holes anywhere," but "side walls having die alignment holes formed on the bottom facing surface thereof." (*See* '591 patent, claim 1; '236 patent, claims 1 & 4)(slight variation in language used).

---

[7] The specifications of the three patents-in-suit are nearly identical, so relevant figures and language (but not claims) can be found in any of the patents.  (Farley 1 Decl. at ¶ 9).

[8] Such cups and cones are in the prior art and fully available to be used.

DEFENDANT BESSER COMPANY'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION                                    - 10 -
No. 3:10-cv-05667-RBL

Merchant & Gould P.C.
701 Fifth Avenue, Suite 4100
Seattle, WA  98104
Telephone: (206) 342-6200

Besser's Corporate Director of Engineer provides additional clarification:

The Besser Mold was originally designed to be used in connection with older Besser machines that had cylindrical vibration units (to vibrate concrete material in the mold). The front and back walls of the Besser Mold assembly have pronounced indentations that allow them to receive and attach to those large, cylindrical, vibration units . . . . [as reflected] in the following illustration:



In this illustration, the green structures are vibration units . . . . When the Besser Mold is used in the SERVOPAC, however, these green-colored vibration units *are not present*. Instead, an "adaptor bar" is attached at each end to fill the indentations, as reflected in this illustration:



In the above picture, the gray metal bar is the adaptor bar, which fills the spaces traditionally filled by the green vibration units on older machines. The adaptor bar is bolted to the front and back sides of the Besser Mold assembly. The entire mold assembly is then *clamped to the concrete products machine* by four electrically actuated (push a button on a touch screen) hydraulic clamps, not ***bolted*** . . . .

(Farley 1 Decl. at ¶¶ 12-14). In summary, there are no holes of any kind in the bottom facing

surface of the Besser Mold side walls.  The "cups" that Columbia points to are not holes and are not

DEFENDANT BESSER COMPANY'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
No. 3:10-cv-05667-RBL
- 11 -
Merchant & Gould P.C.
701 Fifth Avenue, Suite 4100
Seattle, WA  98104
Telephone: (206) 342-6200

in the side wall of the Besser Mold. They are in a separate structure called an adaptor bar. The adaptor bar is attached, not to the side walls, but to the front and back walls. The relevant claim language requires "alignment holes *in the bottom facing surface of the side walls*," not holes somewhere else.  The Besser Mold and SERVOPAC do not meet this claim limitation.

Neither can there be any infringement under the doctrine of equivalents.[9] The doctrine of equivalents can never be used to completely undermine, nullify, vitiate, or expurgate a claim limitation. *Ortho-McNeil Pharm., Inc. v. Caraco Pharm. Labs., Ltd.*, 476 F.3d 1321, 1328 (Fed. Cir. 2007).  Here, the Besser Mold has no hole of any kind in the bottom surfaces of its side walls.  For this reason, the Besser Mold cannot infringe claim 1 of the '591 patent or claims 1 and 4 of the '236 patent either literally or under the doctrine of equivalents.[10]

  **b.**    **Columbia Cannot Establish A Likelihood Of Success On The Merits Under Claim 1 Of The '591 Patent Or Claims 1 And 4 Of The '236 Patent, Because The Besser Mold Is Not "Bolted" To The SERVOPAC Machine As The Claims Require, But Is Fastened In Place By Hydraulic Clamps.**

Claim 1 of the '591 patent and claims 1 and 4 of the '236 patent also require that the mold be *bolted* to the shelves of the concrete products machine. (*See* claim language above; Farley 1 Decl. at ¶ 20).  All three claims refer to aligning the mold assembly on the concrete forming machine, before "**bolting the mold assembly to the shelves.**" ('591 patent, claim 1, '236 patent, claims 1 and 4).  The

---

[9] "There can be no infringement under the doctrine of equivalents if even one limitation of a claim or its equivalent is not present in the accused device." *Lockheed Martin Corp.*, 324 F.3d at 1321; *Asyst Techs. v. Emtrak, Inc.*, 402 F.3d 1188, 1195 (Fed. Cir. 2005). And no claim limitation may be ignored as superfluous. *Eagle Comtronics*, 305 F.3d at 1315.

[10] Because the Besser Mold has no holes of any kind in the bottom facing surface of the side walls, Besser believes that the Court can probably rule on the pending Motion without construing the terms "alignment holes" and "alignment dowels." However, if the Court believes it needs to construe those terms, Besser's constructions are set forth in the Parties' Joint Claim Construction Statement (Doc. No. 68) at 15-18 and 22 (and attached exhibits). Those constructions are also discussed in the First Farley Declaration at ¶¶ 17-19).

DEFENDANT BESSER COMPANY'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION   - 12 -
No. 3:10-cv-05667-RBL

Merchant & Gould P.C.
701 Fifth Avenue, Suite 4100
Seattle, WA 98104
Telephone: (206) 342-6200

ordinary and customary meaning of "bolting" to a person of ordinary skill in the art (at the time of invention) is "to manually fasten using a threaded bolt, which interacts with a threaded, mated nut, a different threaded, mated object (such as a brace), or a threaded, mated hole." (Farley 1 Decl. at ¶ 20). Importantly, Columbia's own construction of the term "bolting" is "secured or locked to the machine with or as if with a bolt or bolts." (Doc. No. 68 at 6). This is similar to Besser's construction. But the SERVOPAC does not manual "bolt" molds into position, as the claims require.

Instead, the SERVOPAC uses a fully-automated hydraulic clamping system, activated by a touch screen computer monitor. The First Declaration of Timothy Farley describes the "hydraulic clamping" system of the SERVOPAC in considerable detail and distinguishes it from the manual "bolting" required by claim 1 of the '591 patent and claims 1 and 4 of the '236 patent:

> In the Besser Mold, the mold assembly is hydraulically clamped to the frame. Indeed, since this is a feature of the SERVOPAC machine, any mold properly designed and fitted to work with a SERVOPAC would be hydraulically clamped to the frame, *not bolted*. The mold change in the SERVOPAC machine is an automated process. To install a mold, the operator uses a touch screen to select the mold replacement or installation process; the machine automatically installs the mold and automatically activates the four hydraulic cylinders which in turn lock the four clamps onto the mold.



> From my point of view, as a person of at least ordinary skill in the relevant art, the words "bolt" or "bolting" cannot be stretched to cover a fully-automated hydraulic clamping system.

DEFENDANT BESSER COMPANY'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION            - 13 -
No. 3:10-cv-05667-RBL

Merchant & Gould P.C.
701 Fifth Avenue, Suite 4100
Seattle, WA  98104
Telephone: (206) 342-6200

(Farley 1 Decl. at ¶¶ 21-22). Ultimately, Farley concludes that "[c]omparing the "bolting" of the mold assembly to the frame with Besser's hydraulic clamping system is analogous to comparing cutting grass with a scythe to using a modern riding mower." (*Id.* at ¶ 26). The differences between the two "systems" are very substantial indeed, with Besser's system being far more advanced.  (*Id.*).

Columbia recently realized that the "bolting" limitation is fatal to its case. That is why Columbia went from asserting a definition of "bolting" similar to Besser's in the Joint Claim Construction Statement to claiming that "bolting" is not a limitation at all in the Motion.  (*Compare* Jt. Claim Construction Statement at 6 *with* Motion at 11). Previously, Columbia requested the following construction of "before bolting" – "a state of the mold assembly during which the mold assembly is not secured or locked to the machine with or as if with a bolt or bolts ***but after which the mold assembly may be secured or locked to the machine with or as if with a bolt or bolts***." (Joint Claim Construction Statement at Plaintiff's Preliminary Claim Construction at 6).  Now, Columbia urges the Court to ignore the term "bolting" or "before bolting." (Motion at 11).

But the two cases Columbia relies on to try *to nullify its own claim language* are easily distinguished. Columbia cites *Texas Instruments, Inc. v. U.S. Int'l Trade Comm'n*, 988 F.2d 1165 (Fed. Cir. 1993) and *Thermal Dynamics v. Tatras, Inc.*, Case No. 04-152-PB, 2004 WL 4957314, at *6 (D. N.H. Dec. 9, 2004).  Both cases hold that a clause which merely describes **the result of the invention** adds nothing to the substance of the claim and is not a limitation.[11] In *Texas Instruments*, the court held that the phrase merely stated "the results of arranging the components of the claims in the manner recited in those claims. . . [and did] not contain any limitations not inherent to the process found in the claims." *Texas Instruments*, 988 F.2d at 1172.   Similarly, in *Thermal*

---

[11]  Columbia also cites *General Elec. Co. v. Sonosite, Inc.*, 568 F. Supp. 2d 983, 995 (W.D. Wis. 2008).   However this case does not support the proposition., and discusses only the unremarkable construction of the term "before storage."

**DEFENDANT BESSER COMPANY'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION                                                                - 14 -
No. 3:10-cv-05667-RBL**

Merchant & Gould P.C.
701 Fifth Avenue, Suite 4100
Seattle, WA  98104
Telephone: (206) 342-6200

*Dynamics*, the court held that the phrase "merely stated one result of the patented invention." *Thermal Dynamics*, 2004 WL 4957314, at *6.

In the claims at issue here, however, "bolting the mold assembly to the shelves" is a new limitation, not a just a repetition or logical outcome of the limitations that came before. ('591 patent, claim 1; '236 patent, claims 1 and 4). Indeed, the claimed molds ***cannot work in a concrete products machine if they are not bolted to the machine***; the alignment pins and holes would never be able to hold the molds in place during operation. (Farley 1 Decl. at ¶¶ 29-30). Hypertechnically, the claim language "thereby holding the mold assembly in a prealigned position" may describe a result of the previous claim limitations (the interaction of the alignment pins with the alignment holes). But the rest of that phrase goes on to *add* an additional limitation that is clearly not part of the description of the results: "before bolting the mold assembly to the shelves." *Texas Instruments* and *Thermal Dynamics* are this inapposite, because the entire phrase "thereby holding the mold assembly in a prealigned position before bolting the mold assembly to the shelves" is not limited to reciting the result of the invention.

Where such "thereby and whereby clauses" actually add a new limitation, courts give effect to those limitations. *See C&C Jewelry Mfg. v. Trent West*, 2010 U.S. Dist. LEXIS 77062, at *13 (N.D. Cal. July 6, 2010) (noting that phrase is not necessarily the result of the method recited in the claims, and thus adds a limitation); *Pioneer Corp. v. Samsung SDI Co., Ltd.*, 2007 U.S. Dist. LEXIS 97894 at *54-55 (E.D. Texas, Dec. 27, 2007) (disputed claim did not merely state the result of the claim limitation). Columbia's attempt to ignore the "before bolting" language violates the doctrine requiring that we give meaning to *all* terms of a claim wherever possible. *See Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005); *Pause Tech. LLC v. TiVo, Inc.*, 419 F.3d 1326 (Fed. Cir. 2005). Moreover, the construction Columbia urges ignores the numerous times the

**DEFENDANT BESSER COMPANY'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**                                  **- 15 -**
**No. 3:10-cv-05667-RBL**

Merchant & Gould P.C.
701 Fifth Avenue, Suite 4100
Seattle, WA  98104
Telephone: (206) 342-6200

term "bolting" appears in the specification.  (*See, e.g.*, '591 Patent, col. 3, lines 13-15 ("The mold box is mounted to the frame by bolting the head assembly to the compression beam and bolting the mold assembly to the frame."); 18; col. 6, lines 24, 26-28; col. 7, line 43; col. 8, lines 34, 57). In each case, the term "bolting" is used in its ordinary sense. (Farley 1 Decl. at ¶¶ 29-30). Columbia cannot seriously content that claim language requiring bolting of molds to the machine, language that is essential to the actual function of the machine, is nugatory.  *See Merck*, 395 F.3d at 1371-1372 (uses of term in specification supports giving term its ordinary meaning). Because the Besser SERVOPAC machine uses a sophisticated hydraulic clamping system to fasten molds to the frame, and not bolts, the SERVOPAC cannot infringe claim 1 of the '591 patent or claims 1 and 4 of the '236 patent.

> **c.     Columbia Cannot Establish A Likelihood of Success On The Merits Under Claim 1 Of The '039 Patent, Because The SERVOPAC Feed Drawer Does Not Move "Vertically" Into A Dispensing Position And Does Not Require A Mechanism To Lock It In Dispensing Position.**

The fourth and final claim asserted by Columbia in this lawsuit is claim 1 of the '039 patent. That claim reads as follows:

> A method for forming concrete products in a products forming machine having a frame and a feed drawer assembly mounted to said frame, the method comprising the steps of:
>
> mounting a mold assembly to the concrete products forming machine under the feed drawer assembly, the mold assembly including internal cavities and a top side;
>
> ***vertically moving the feed drawer assembly to a dispensing position located a proper distance above the top side of the mold assembly***;
>
> ***locking the feed drawer assembly in the dispensing position***; and
>
> dispensing a concrete material into the mold assembly cavities.

('039 patent, claim 1) (emphasis added). This claim requires that the feed drawer be "vertically moved to a dispensing position" and then be "locked in the dispensing position." ('039 patent, claim 1; *see*

---

DEFENDANT BESSER COMPANY'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION                          - 16 -
No. 3:10-cv-05667-RBL

Merchant & Gould P.C.
701 Fifth Avenue, Suite 4100
Seattle, WA  98104
Telephone: (206) 342-6200

*also* col. 3, lines 45-51; col. 9, lines 61-67; col. 10, lines 1-5; Farley 1 Decl. at ¶ 31). The SERVOPAC does not do these things and thus cannot infringe this claim:

> The feed drawer of the SERVOPAC is capable of vertical movement up and down on jack screws. But the feed drawer never "vertically moves to a dispensing position located a proper distance above the top side of the mold assembly." When the feed drawer of the SERVOPAC moves vertically, it is not in vertical alignment with the mold. Instead, it is off to the side and not above the mold. The height of the feed drawer is adjusted when a new mold is installed to be a certain distance above the height of the mold, so the feed drawer will not run into the mold or be too high to deliver concrete properly. Once that single vertical adjustment is made, the feed drawer only reciprocates back and forth horizontally. Accordingly, the SERVOPAC feed drawer assembly never moves **"vertically to a dispensing position located a proper distance above the top side of the mold assembly**, as claim 1 of the '039 patent requires.

(Farley 1 Decl. at ¶ 32). Because the SERVOPAC feed drawer does not move *vertically to a dispensing position*, it cannot infringe claim 1 of the '039 patent.

The SERVOPAC also does not require a lock to hold it in the dispensing position. (*Id.* at ¶ 32). The SERVOPAC feed drawer moves up and down on jack screws. There is enough stiffness or resistance in the system to hold the feed drawer in proper vertical position as it reciprocates back and forth over the mold. (*Id.*). No lock is needed to keep the feed drawer fixed along its vertical axis.

> The '039 patent gives only one example of "locking" the feed drawer assembly into vertical position. In the patent, the feed drawer moves vertically on four telescoping legs. Basically, **<u>jack screws</u>** move interior tubes up and down with respect to the outer tubes of the telescoping legs. When the feed drawer is in dispensing position, the telescoping legs are locked in position by an air brake.

('039 patent, col. 9, lines 60-67; col. 10, lines 1-5). The SERVOPAC does not have anything like this airbrake for locking the feed drawer vertically in a dispensing position. In the SERVOPAC, the feed drawer is moved by a gearbox that rotates jack screws up and down. The jack screws then lift the feed box assembly frame up and down. The jack screws offer enough resistance to movement

DEFENDANT BESSER COMPANY'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION                                    - 17 -
No. 3:10-cv-05667-RBL

Merchant & Gould P.C.
701 Fifth Avenue, Suite 4100
Seattle, WA  98104
Telephone: (206) 342-6200

that the feed drawer will not move vertically once the jack screws move the feed drawer to any given position (and stop moving). (Farley Decl. at ¶ 33).[12]

As noted previously, the feed drawer in the SERVOPAC does not move vertically to a dispensing position above the mold.  It moves into position above the mold *horizontally*.  This sort of horizontal movement has been known in the art for decades. For example, U.S. Patent Nos. 2,859,502, 2,842,827, and 2,566,787, attached to the First Farley Declaration as **Exhibit E**, all plainly show a reciprocating feed drawer that moves horizontally to and from a dispensing position above the mold. For all these reasons, the Besser SERVOPAC cannot infringe claim 1 of the '039 patent.

> **d.     Columbia Cannot Establish A Likelihood of Success On The Merits Under Claim 1 Of The '039 Patent, Because That Claim Is Invalid.**

Claim 1 of the '039 patent is also invalid. The Second Farley Declaration is largely dedicated to establishing the invalidity of claim 1 of the '039 patent, as being both anticipated by several examples of prior art (each alone) or rendered obvious by the prior art considered in combination.  (*See generally* Farley 2 Decl.). Under 35 U.S.C. § 102 a claim is anticipated "if each and every limitation is found either expressly or inherently in a *single prior art reference*." *Celeritas Techs. Ltd. v. Rockwell Int'l Corp.*, 150 F.3d 1354, 1360 (Fed. Cir. 1998).[13] In contrast, a claim is obvious when "the differences between the subject matter sought to be patented and the prior art are

---

[12] Columbia may try to argue that the jackscrews are themselves a locking mechanism, but the '039 patent discloses the air brake as the locking mechanism. Jackscrews are also referred to and used in the '039 patent, but are not described as a locking mechanism; they are part of the unclaimed movement mechanism of the feed drawer and are thus ***dedicated to the public***; they cannot be read into the claim. This is, again, just another attempt by Columbia to stretch its claims into something that can snare Besser.

[13] "Anticipation by inherent disclosure is appropriate only when the reference discloses prior art that must *necessarily* include the unstated limitation . . . ." *Transclean Corp. v. Bridgewood Servs., Inc.*, 290 F.3d 1364, 1373 (Fed. Cir. 2002) (emphasis in original).

DEFENDANT BESSER COMPANY'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION                                          - 18 -
No. 3:10-cv-05667-RBL

Merchant & Gould P.C.
701 Fifth Avenue, Suite 4100
Seattle, WA  98104
Telephone: (206) 342-6200

such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103; *see also KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727 (2007).

The Second Farley Declaration discusses four examples of prior art, each of which anticipates claim 1 of the '039 patent. To conserve space, only one example is reproduced here:

> I am personally aware of an older Besser concrete products machine called the Versapac that Besser made and offered for sale at least as early as 1989. For example, the machine was publicly shown at the Bauma Trade Fair that took place April 10-16, 1989.  Attached as **Exhibit 4** are several pictures or diagrams of the Versapac, as well as an article about the Bauma Trade Fair in April of 1989. In one picture, I have colored the relevant elements.  A hydraulic cylinder (green) lifts the feed drawer (yellow) up and down to adjust to different mold heights. The machine also had a frame, and a mold box.  The mold box and the feed drawer were both attached to the frame. The mold box could have either a single cavity or multiple cavities. The mold box was mounted under the feed drawer. As noted, the feed drawer was moved vertically into a dispensing position. The feed drawer could then be *locked* into position by moving a clamping bar (blue in another picture) into engagement with a clamping block (red), creating a bar lock that held the feed drawer in its dispensing position. The Versapac thus contained each and every limitation of claim 1 of the '039 patent and anticipates that claim.

(Farley 2 Decl. at ¶ 9). Besser's extensive invalidity arguments are set forth in the Second Farley Declaration (Doc. No. 80). Those examples of prior art, whether considered individually (anticipation) or together (obviousness), create a "serious question" about the validity of claim 1 of the '039 patent.

**2.    Columbia Cannot Establish Irreparable Harm, Because It Waited 14 Months To Bring This Motion, It Has Offered Little Or No Evidence Of Harm, And Monetary Damages Are An Adequate Remedy For Any Alleged Infringement.**

Columbia must next demonstrate that irreparable injury is *likely* in the absence of an injunction. *Winter*, 129 S. Ct. at 375; *Titan Tire*, 566 F.3d at 1376. Columbia's arguments on irreparable harm suffer from three main defects. First, they come 14 months late. Second, they are

DEFENDANT BESSER COMPANY'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION         - 19 -
No. 3:10-cv-05667-RBL

Merchant & Gould P.C.
701 Fifth Avenue, Suite 4100
Seattle, WA  98104
Telephone: (206) 342-6200

1   supported by almost no competent evidence of any kind.  And third, the facts of this case uniquely

2   make any alleged infringement fully compensable through money damages.

3   This case was commenced on September 17, 2010.  (Doc. No. 1).  Almost 14 months later,

4   on November 8, 2011, Columbia first moved for injunctive relief. (Doc. No. 69; Beattie Decl. at ¶ 3,

5   Doc. No. 79). Delay in seeking an injunction is an important factor undermining the purported need

6   for injunctive relief in patent and other IP cases. *Hybritech Inc. v. Abbott Lab.*, 849 F.2d at 1446,

7   1457 (Fed. Cir. 1988); *T.J. Smith & Nephew Ltd. v. Consolidated Medical Equip. Corp.*, 821 F.2d

8   646, 648 (Fed. Cir. 1987) (15 month delay significant).

9   "Courts have often denied preliminary injunctions to plaintiffs whose delay suggested that

10   irreparable harm was unlikely." *Krueger Int'l, Inc. v. Nightingale Inc.*, 915 F. Supp. 595, 613

11   (S.D.N.Y. 1996) (citing *Tough Traveler*, 60 F.3d 964, 968 (2d Cir. 1995) (nine month wait before

12   filing complaint is too long, particularly when plaintiff delayed another four months before moving

13   for preliminary injunction); *Century Time Ltd. v. Interchron Ltd.*, 729 F. Supp. 366 (S.D.N.Y. 1990)

14   (six month wait is too long); *Comic Strip, Inc. v. Fox Television Stations, Inc.*, 710 F. Supp. 976

15   (S.D.N.Y. 1989) (seven months is too long).  Indeed, courts routinely reject preliminary injunction

16   motions for delays of just a few months, never mind over a year.  *See supra*.

17   Here, Columbia provides no real justification for its 14 month delay in bringing the Motion.

18   (Motion at 1-2). As is its habit, Columbia tries to blame Besser for its own shortcomings. With

19   neither irony, nor self-consciousness, Columbia cites Besser's alleged "stalling and evasion" as its

20   excuse for waiting over a year to move for an injunction, which many litigants request when they

21   file the action.  Columbia's effort to pass the buck fails.

22   In the related, later-filed lawsuit, *Columbia Machine, Inc. v. Besser Company*, Case No.

23   3:11-vc-05268-RBL, Besser voluntarily stopped production and sale of the accused whole CPM-50

**DEFENDANT BESSER COMPANY'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**      **- 20 -**
**No. 3:10-cv-05667-RBL**

Merchant & Gould P.C.
701 Fifth Avenue, Suite 4100
Seattle, WA  98104
Telephone: (206) 342-6200

type molds, because Columbia's claims seemed at least colorable.  (Beattie Decl. at ¶¶ 3-4).  Besser even tried an early settlement, since the amount in controversy in that case is modest.  (*Id.* at ¶ 4).  But in this case, Besser *never suggested* that it would discontinue making, using, offering to sell, and selling the SERVOPAC. (*Id.* at ¶ 5).  In early communications with Columbia, counsel for Besser even suggested that some of Besser's defenses were "slam dunks" and that the patent claims "really do not seem to present anything new." (*Id.*).  Columbia could thus have been under no illusions that Besser fully intended to continue sales of the SERVOPAC.[14]

Columbia advances scant evidence in support of its claims of irreparable harm.  Indeed, the only "evidence" of irreparable harm is the Aaseth Declaration (Doc. No. 70). Mr. Aaseth suggests that Besser's sales of the SERVOPAC is "swaying potential customers away from Columbia" and preventing Columbia from "capitalizing on the use of its patented technology to attract customers to other commercial goods."  (Aaseth Decl. at ¶¶ 14-15). He also claims that SERVOPAC sales "affect Columbia's reputation in the marketplace." (*Id.*).  Finally, he suggests sales of SERVOPAC and the Besser Mold "erodes Columbia's market share."  (*Id.*). Aside from these exercises in *ipse dixit*, Columbia submits no evidence to back up these claims.  It has conducted no studies or surveys, hired no marketing experts, provided no numerical support, and identified no customers who have actually switched their allegiance to Besser because of a SERVOPAC sale.

The Federal Circuit has *insisted* that the dramatic and extraordinary remedy of a preliminary injunction will not issue to prevent "a mere possibility of injury":

---

[14]  Columbia's suggestion that Besser has an obligation to immediately tell Columbia of each SERVOPAC sale is also addressed in the Beattie Decl. at ¶¶ 9-11 and Musch Decl. at ¶ 9.  Besser made no sales of the SERVOPAC in 2010, so there were none available to inspect until approximately last month. (Musch Decl. at ¶ 10).  But Columbia *had* an opportunity to inspect a SERVOPAC in Tennessee in May of 2011, and *did inspect it.* (Beattie Decl. at ¶¶ 8-10).  After that inspection, Columbia did not suggest it needed another inspection until it learned that Besser had sold another SERVOPAC in June of 2011.  (*Id.* at ¶ 9).

DEFENDANT BESSER COMPANY'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION
No. 3:10-cv-05667-RBL

- 21 -

Merchant & Gould P.C.
701 Fifth Avenue, Suite 4100
Seattle, WA  98104
Telephone: (206) 342-6200

> Only a viable threat of serious harm that cannot be undone authorizes exercise of a court's equitable power to enjoin before the merits are fully determined; a preliminary injunction *will not issue simply to prevent a mere possibility of injury*, even where prospective injury is great.

*Cordis Corp. v. Medtronic, Inc.*, 780 F.2d 991, 996 (Fed. Cir. 1985) (emphasis added).  Speculation about possible or "potential" future harms is never sufficient to justify the draconian remedy of a preliminary injunction. Yet, that is precisely what Columbia argues for – ***potential*** damage to reputation and loss of market share.[15]

"In a patent infringement case, lost market share must be proven (or at least substantiated with some evidence) in order for it to support entry of a preliminary injunction . . . ." *Red Bend, Ltd. v. Google, Inc.*, 2011 U.S. Dist. LEXIS 36217, at *43 (Mar. 21, 2011); *Automated Merch. Sys., Inc. v. Crane Co.*, 357 F. App'x 297, 301 (Fed. Cir. 2009). Similarly, Columbia carries the burden of demonstrating alleged damage to its reputation.  *Bandag, Inc. v. Jack's Tire & Oil, Inc.*, 190 F.3d 924, 926 (9th Cir. 1999). Columbia has established neither lost market share, nor damage to its reputation. In *Precision Automation, Inc. v. Tech. Servs., Inc.*, Case No. 07-CI-707-AS, 2007 U.S. Dist. LEXIS 93200, at *17-*18 (D. Or. Dec. 14, 2007), the U.S. District Court for the District of Oregon rejected a motion for a preliminary injunction that was similarly weak in its factual support on irreparable harm. After questioning whether the plaintiffs had alleged the kinds of harms that can even be characterized as "irreparable," the court noted that plaintiffs certainly "have not offered 'substantial evidence' of irreparable harm." *Id.* at *18.  Such is the case here.

---

[15] These kinds of "stock" or commonplace claims for irreparable harm are routinely rejected, because any patent holder that practices its patent could claim it *might* lose market share or suffer price erosion.  *See e.g.*, *Precision Automation, Inc. v. Tech. Servs., Inc.*, Case No. 07-CI-707-AS, 2007 U.S. Dist. LEXIS 93200, at *17-*18 (D. Or. Dec. 14, 2007).

DEFENDANT BESSER COMPANY'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION                        - 22 -
No. 3:10-cv-05667-RBL

Merchant & Gould P.C.
701 Fifth Avenue, Suite 4100
Seattle, WA 98104
Telephone: (206) 342-6200

The *facts* in this case do not support even Columbia's speculations. Besser has sold just six SERVOPAC machines. (Musch Decl. at ¶ 3).  Only one has been sold since this lawsuit began. (*Id.*). As far as Besser can tell, all six sales have replaced *existing Besser machines*; Columbia machines have not been replaced. (*Id.* at ¶ 8).  Besser expects to make only two more sales before this lawsuit is resolved; Columbia would thus have the Court drop the nuclear bomb of injunctive relief to stop *two of eight sales*.  (*Id.* at ¶ 3).

Logically speaking, if the sale of 2 SERVOPACs a year would affect Columbia's market share, *it should have happened by now*. Besser has averaged two sales a year since 2008. (*Id.*). Columbia should have therefore been able to document any such harm to its reputation or market share, *if it existed*.  Further, Columbia sells 10-15 concrete products machines a year, each more expensive than the SERVOPAC.  (*Compare* Aaseth Decl. at ¶¶ 9-10 *with* Musch Decl. at ¶ 3).  He also admits that there are 8-10 direct competitors in the market place.  (*Id.* at ¶ 10).  If these competitors sell even 2-4 machines a year each, that is at least 36 machines sold each year.[16] Measured in that light, Besser's sale of 2 SERVOPACs each year is *trifling*; it cannot affect Columbia's market share or reputation. (*See* Musch Decl. at ¶ 5) ("NO measurable affect on Columbia's market share").

Additionally, no customer buys products based on a couple pins on the frame, holes in the bottoms of the mold side walls, or a locking mechanism on the feed drawer.  (*Id.* at ¶¶ 7-8). No Besser customer has ever asked for these features, and no sales have ever been made based on them. (*Id.*). The presence or absence of these features thus cannot affect Columbia's reputation. (*See id.*). Neither is there any basis for questioning Besser's ability to pay any judgment in this matter, in the unlikely event Columbia wins one.  (Musch Decl. at ¶ 9).  Besser is solvent, has plenty of assets,

---

[16] 3 sales per 7 competitors, plus an average of 13 for Columbia, plus 2 Besser SERVOPACs.

**DEFENDANT BESSER COMPANY'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**
**No. 3:10-cv-05667-RBL**

- 23 -

Merchant & Gould P.C.
701 Fifth Avenue, Suite 4100
Seattle, WA  98104
Telephone: (206) 342-6200

has very few debts, and is adapting to the realities of the current recession, hard as it has been. (*Id.* at ¶¶ 6, 9).

Finally, plaintiffs seeking injunctive relief must demonstrate "that remedies available at law, such as monetary damages, are inadequate to compensate for that injury." *eBay Inc. v. Merc Exch., L.L.C.,* 547 U.S. 388, 391 (2006); *Automated Merch. Sys., Inc. v. Crane Co.*, 357 F. App'x 297, 301 (Fed. Cir. 2009). Here, Columbia cannot prove that monetary damages are inadequate. Indeed, because so few SERVOPAC machines are sold each year, it will be relatively easy for Besser to accurately assess sales of SERVOPAC, molds, and related goods, once Besser knows Columbia's precise damages theories:[17]

> [T]here is an adequate legal remedy in money damages here. At present, there are only small unit sales of the SERVOPAC machine. Again, there will probably be 8 or fewer total sales of the SERVOPAC by the time this case resolves through motion practice or trial. Besser can track the amount paid for each SERVOPAC, and has provided that information to Columbia for all 6 prior sales. We can also track sales of other products following sale of a SERVOPAC. Before trial, we would thus be able to provide complete and accurate numbers concerning all SERVOPAC sales and any other related products sales.

(Musch Decl. at ¶ 4). Because Columbia waited 14 months to bring this motion, because it offers virtually no evidence on irreparable harm, and because there is an adequate remedy at law, Columbia's Motion should be denied.

**3.     The Balance Of Harms Tips In Besser's Favor, Because Besser Has Been Selling The SERVOPAC Machine For 4 Years, And Then Patented Features At Issue Do Not Drive Demand And Constitute An Insignificant Part Of The Machine's Value.**

The Court must balance the harm that Columbia would incur from denial of the preliminary injunction against the harm that Besser will suffer if the injunction is granted. *Hybritech v. Abbott*

---

[17] Besser has already given Columbia the gross revenues for the sale of each SERVOPAC. (*See* Beattie Decl. at ¶ 8).

**DEFENDANT BESSER COMPANY'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION** - 24 -
**No. 3:10-cv-05667-RBL**

Merchant & Gould P.C.
701 Fifth Avenue, Suite 4100
Seattle, WA  98104
Telephone: (206) 342-6200

*Labs.*, 849 F.2d 1446, 1457. As just discussed, Columbia's alleged harms are not supported by meaningful evidence. Besser is likely to make only two more sales of the SERVOPAC before this case is resolved. (Musch Decl. at ¶ 3). Prior sales have not had any demonstrable affect on Columbia's reputation or market share, and two more sales will not either. (*Id.* at ¶¶ 4-5). Columbia's irreparable harm claims are speculative, even viewed charitably.

In contrast, several facts highlight the harm that an injunction would do to Besser. SERVOPAC sales bring in significant revenues, as Columbia acknowledges. (Aaseth Decl. at ¶ 13). Moreover, Besser has now been selling the SERVOPAC for 4 years. (Musch Decl. at ¶ 6).  It seems unfair to allow Columbia to interfere with those sales after allowing them to go on for so long. The SERVOPAC is also Besser's "flagship" product. (*Id.* at ¶ 3).  During a time of terrible recession, the high-tech SERVOPAC is Besser's best evidence of continued success.  (*Id.*).

Finally, there is a "tail wagging the dog" element to Columbia's Motion.  Three of the four claims at issue relate mainly to the mold, not to the whole machine.  And the claimed inventions at issue both fail to drive demand and would comprise only a tiny fraction of the SERVOPAC's value, even if they were present. (*Id.* at ¶ 6; Farley 2 Decl. at ¶ 16).

> On the issue of irreparable harm, I want to add that the elements at issue in the four asserted claims are minor elements: cylindrical pins, holes in the bottom facing surfaces of the side walls, and a brake on any means of vertically moving the feed drawer on an accused machine.  (*See* Claims). These minor components must be worth no more than $1,000 in a final assembled machine worth over $500,000. Besser's SERVOPAC does not meet all the limitations of the four asserted claims. But even if it did, it would make no sense to enjoin the sale of a $500,000 machine because of a dispute about a couple small pins, some holes, and a break.

(Farley 2 Decl. at ¶ 16). Given these facts, the balance of harms appears to tilt in Besser's favor.

**DEFENDANT BESSER COMPANY'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION** - 25 -
**No. 3:10-cv-05667-RBL**

Merchant & Gould P.C.
701 Fifth Avenue, Suite 4100
Seattle, WA  98104
Telephone: (206) 342-6200

**4.     The Public Interest Does Not Favor Issuing An Injunction In This Case.**

Columbia readily admits that there is no "critical interest" favoring issuance of an injunction in this case. (Motion at 20) (citing *Hybritech*, 849 F.2d at 1458). But Columbia makes the stock argument that the public has an interest in enforcing patents. (*Id.*). Courts, however, do not accept the argument at face value, because any patentee that practices his patent can make the same contention. *Kimberly-Clark Worldwide, Inc. v .Tyco Health Care Group, LP*, 635 F. Supp. 2d 870, 881 (E.D. Wis. 2009). Thus, "[t]ypically, in a patent infringement case, although there exists a public interest in protecting rights secured by valid patents, the focus of the district court's public interest analysis should be whether there exists some critical public interest that would be injured." *Hybritech* at 1458. Columbia has not identified any such public interest.

In contrast, issuing an injunction harms the public interest in this case.  First, there is a public interest in free and fair competition. That interest would appear to be strongest where the asserted patent represents only a tiny portion of the value of the product that would be enjoined.  As previously noted, the relevant "elements" of the four asserted claims are holes in the bottom of a mold side wall, pins on the frame of a machine, and a mechanism to lock the feed drawer in place. (Farley 2 Decl. at ¶ 16).  Enjoining the SERVOPAC, a half million dollar machine, because of patented features worth only a few hundred dollars is analogous to enjoining the sale of a new line of MERCEDES cars because of a dispute about ownership of the valve stem on the tire.  Such disproportionate waste and unfairness is certainly not in the public interest.[18]

---

[18] Federal Rule of Civil Procedure 65 mandates that a bond be posted to protect the victim of an ill-advised preliminary injunction. Fed. R. Civ. P. 65.  Here again, Columbia is not following the law.  It asks for the most drastic relief possible – stop all sales of Besser's flagship SERVOPAC machine.  Yet, it has not posted any bond, much less an adequate bond. Besser has explained why "Columbia should be required to post a bond of approximately $2,000,000 to cover any harm Besser would suffer if the Court granted Columbia's motion." (Musch Decl. at ¶ 11).

DEFENDANT BESSER COMPANY'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION                        - 26 -
No. 3:10-cv-05667-RBL

Merchant & Gould P.C.
701 Fifth Avenue, Suite 4100
Seattle, WA  98104
Telephone: (206) 342-6200

## **CONCLUSION**

Columbia is 20,000 leagues away from being entitled to a preliminary injunction.  Columbia points to the wrong structure in trying to assert that the Besser Mold has "alignment holes" in the bottom facing surface of its side walls. No lawyering, no sophistry, no obloquy, and no mislabeled photos can bore holes in the bottom facing surface of the Besser Mold side walls.  Columbia wars with and tries to escape *its own claim language*, having understood that the Besser SERVOPAC fastens molds to the frame by hydraulic clamping, and *not by "bolting" as Columbia's claims require*. Columbia also ignores the plain meaning of the expression *vertically moving the feed drawer assembly to a dispensing position*, since the SERVOPAC feed drawer unerringly moves to a dispensing position *horizontally*. Columbia offers no surveys, no customer declarations, no analysis, and essentially no evidence to support its claims of irreparable harm. At the end of the day, Columbia does not merely fall short of establishing its right to a preliminary injunction. Columbia's Motion, like its lawsuit, skirts dangerously close to the border of frivolity, and that Motion should be denied.

Dated: November 30, 2011

Respectfully submitted,

By: s/ Paul H. Beattie
Paul H. Beattie, WSBA # 30277
701 Fifth Avenue, Suite 4100
Seattle, Washington  98104
Tel:  (206) 342-6200
Fax:  (206) 342-6201
E-mail:  pbeattie@merchantgould.com
*Attorneys for Defendant BESSER COMPANY*

**DEFENDANT BESSER COMPANY'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION          - 27 -
No. 3:10-cv-05667-RBL**

Merchant & Gould P.C.
701 Fifth Avenue, Suite 4100
Seattle, WA  98104
Telephone: (206) 342-6200

1

2

## <u>CERTIFICATE OF SERVICE</u>

I certify that on November 30, 2011, I served **DEFENDANT BESSER COMPANY'S**

3

**OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION** on the following persons at

4

the noted addresses by the indicated methods:

5

6

7    Hillary A. Brooks

     **MARGER JOHNSON & MCCOLLOM**

8    210 SW Morrison St., Suite 400

     Portland, OR  97204

9    Tel:  (503) 222-3613

     Fax:  (503) 574-4622

10   Email:  hillary@techlaw.com

     *Attorney for Plaintiff*

11

12

13

14   by:

15

16   ☐   U.S. Postal Service, ordinary first class mail

     ☐   U.S. Postal Service, certified or registered mail,

         return receipt requested

17   ☐   hand delivery to:

     ☐   facsimile

18   ☒   electronic service through the CM/ECF court system

     ☐   other (specify)  E-mailed to:

19

20

21

22                                          s/ Kayla E. Butcher

                                            Kayla E. Butcher

23

24

25

26

27

DEFENDANT BESSER COMPANY'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION                    - 28 -
No. 3:10-cv-05667-RBL

Merchant & Gould P.C.
701 Fifth Avenue, Suite 4100
Seattle, WA  98104
Telephone: (206) 342-6200