HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| COLUMBIA MACHINE, INC., a Washington corporation,<br><br>               Plaintiff,<br><br>   v.<br><br>BESSER COMPANY, a Michigan corporation,<br><br>               Defendant. | No. 10-cv-5667 RBL<br><br>ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER<br><br>[Dkts. #69, 72] |

Before the Court is Plaintiff Columbia Machine Inc.'s Motion for a Preliminary Injunction and Motion for a Temporary Restraining Order. Dkt. 69, 72. Columbia contends that Defendant Besser Company sold at least two concrete products forming machines that infringe three patents. Dkt. 69 at 1-2. Columbia claims that only injunctive relief can prevent further harm. *Id.* at 2. Besser responds that Columbia has not made the requisite showing to merit entry of the "nuclear bomb"—the injunction. Dkt. 83 at 1, 22, 23. Columbia's motion for a temporary restraining order and its motion for a preliminary injunction are denied.

## I. FACTUAL BACKGROUND

Columbia and Besser both manufacture concrete products machines. Dkt. 69 at 2, Dkt. 83 at 5-6. They are embroiled in this and a second suit both related to patent infringement. 11-cv-05268 RBL. At issue in this case are three patents: U.S. Patent No. 5,807,691 ('591), U.S.

1  Patent No. 6,177,039 ('039), and U.S. Patent No. 6,352,236 ('236). Dkt. 69 at 2. Columbia
2  maintains that Besser infringes Claim 1 of each of the above patents. *Id.* Claim 1 of the '591
3  Patent relates to a "mold box" for forming concrete products. *Id.* Claim 1 of the '236 Patent
4  relates to a method for aligning the mold assembly with a concrete products forming machine.
5  *Id.* Claim 1 of the '039 Patent relates to a method for forming concrete products in a products
6  forming machine respectively. *Id.*

7  Since 2007, Besser has manufactured and sold the SERVOPAC concrete products
8  machine. Dkt. 83 at 1. The SERVOPAC is a "top-flight, fully-automated machine" and is
9  Besser's flagship concrete products machine. Dkt. 83 at 6, 1. Columbia claims that Besser's
10 SERVOPAC machine and mold boxes literally or under the doctrine of equivalents, infringe the
11 above patents. Dkt. 69 at 3. Besser denies that its SERVOPAC and mold box infringe and
12 contend that the SERVOPAC is "far more automated and advanced than the machines
13 contemplated in Columbia's patents." *Id.* at 6. Columbia has not licensed any of its patents to
14 Besser. *Id.* at 2.

15 Columbia alleges that Besser recently sold two infringing SERVOPACs. *Id.* at 1-2.
16 Columbia states that it believes the delivery date of the infringing machines is imminent. *Id.* at 4
17 n.3. It asks the Court to enjoin the sale, arguing that it is likely to succeed on the merits of its
18 infringement claim and that it has met the other requirements for injunctive relief. Besser argues
19 that Columbia has neither shown it is likely to succeed on the merits of its infringement claim,
20 nor shown any of the other requirements to merit an injunction.

21 The Court has not yet construed the claims in the subject patents. A *Markman* claims-
22 construction hearing on the patents at issue is scheduled for April 12, 2012.

23

24

## II. DISCUSSION

The standard for the temporary restraining order and preliminary injunction are "substantially identical." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain a preliminary injunction, Columbia must show: (1) that it likely to succeed on the merits, (2) that it is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in its favor, and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Counsel, Inc.*, 555 U.S. 7, 20 (2008); *Titan Tire Corp., v. Case New Holland, Inc.*, 566 F.3d 1372, 1375-76 (Fed. Cir. 2009). Injunctive relief is an "extraordinary remedy" that "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 20 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).

Granting injunctive relief is "an act of equitable discretion" on the part of the district court. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). As such, no one factor is necessarily dispositive, but "the absence of an adequate showing with regard to any one factor may be sufficient, given the weight or lack of it assigned the other factors, to justify [denying the motion]." *Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc.*, 908 F.2d 951, 953 (Fed. Cir. 1990); *Jack Guttman, Inc. v. Kopykake Enters., Inc.*, 302 F.3d 1352, 1363 (Fed. Cir. 2002).

At this relatively early stage of the proceedings, the Court must "determine whether it is more likely than not" that the plaintiff will meet its burden at trial. *Titan Tire Corp.*, 566 F.3d at 1379. The burdens of proof in a preliminary injunction motion track those at trial. *Genentech, Inc. v. Novo Nordisk, A/S*, 108 F.3d 1361, 1364 (Fed. Cir. 1987).

**A.    Columbia Has Not Established a Likelihood of Success on the Merits.**

1    Columbia argues that it has shown it is likely to succeed on the merits of its patent
2 infringement claims, despite the fact that the Court has not yet adopted its construction of the
3 claims. Dkt. 69 at 7. Failure to show likelihood of success on the merits is dispositive. *Doe v.*
4 *Reed*, 586 F.3d 671, 681 n. 14 (9th Cir. 2009).
5    To demonstrate that it is likely to succeed on the merits at trial, Columbia must
6 demonstrate that it "will likely prove infringement, and that it will likely withstand challenges, if
7 any, to the validity of the patent." *Genentech*, 108 F.3d at 1376. In a two-step patent
8 infringement analysis, the Court must first construe the claim to determine its proper scope, and
9 second, evaluate whether the properly construed claims encompass the accused products. *Solvay*
10 *S.A. v. Honeywell Int'l, Inc.*, 622 F.3d 1367, 1379 (Fed. Cir. 2010) (quoting *Markman v.*
11 *Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995)). The first step in a patent
12 infringement analysis requires the Court to determine "the meaning and scope of the patent
13 claims asserted to be infringed." *Markman*, 52 F.3d at 976. While claim construction is a matter
14 of law and therefore will be a task for the Court, it has not yet adopted its construction of the
15 claims. The parties vehemently disagree over the appropriate claim construction
16    Columbia asserts that under its construction of the claims, Besser's products infringe in
17 three primary ways. First, Besser's mold assembly's corresponding "cups" in the adaptor bar
18 and "cones" on the machine shelf literally infringe, or are the functional equivalent of, the
19 alignment holes and dowels in the side walls of the unit that the patent claims. Dkt. 87 at 2-3.
20 Second, Columbia assert that hydraulically clamping the mold assembly to the concrete products
21 forming machine, as Besser's machine does, is the functional equivalent of bolting the unit to the
22 machine, as the patent claims. Dkt. 87 at 3. And third, the feed drawer's movement and
23 cessation of movement infringe under its proposed construction. Dkt. 87 at 6.
24

Besser denies these contentions. It maintains that the patent claim specifically states "holes in the side walls" and there are no holes anywhere on the Besser product's side wall. Dkt. 83 at 2. It contends that the hydraulic clamps it uses to attach the unit to the machine are significantly more advanced than bolts and therefore materially different. *Id.* at 3. And, it claims that the feed drawer moves horizontally as opposed to vertically and has no mechanism to lock the drawer in place as the claim requires. *Id.*

On the record now before the Court, Besser's alternate claim constructions seem facially plausible. Consequently, Columbia has not shown it is likely to succeed on the merits. Even if Columbia had shown it was likely to succeed, however, the remaining factors support the conclusion that injunctive relief is inappropriate.

**B.     Columbia Has Not Established a Likelihood of Irreparable Harm.**

Columbia alleges Besser irreparably harmed Columbia in three ways. First, it unfairly competes for Columbia's market share using Columbia's patented technology. Dkt. 69 at 15. As this is a brand-loyal market, every sale that Besser makes decreases Columbia's market share. Second, Besser decreases the value of Columbia's technology by forcing Columbia to compete with its own patented products. Dkt. 69 at 15. Third, Columbia alleges that monetary damages are inadequate. The brand-loyal nature of this market renders monetary damages impossible to calculate. And, even if the damages are calculable, Besser is unable to satisfy an award for damages the Court may impose. *Id.*

Besser denies that it is financially unstable and responds that Columbia has provided insufficient evidence that it is likely to suffer irreparable harm. Dkt. 83 at 21, 22-23. Further, Columbia's fourteen-month delay before seeking an injunction is evidence that Besser's sales do not irreparably harm Columbia. Dkt. 83 at 20. Columbia asserts that, though delay is not

determinative, it sought injunctive relief immediately upon discovering that Besser continued selling the accused products. Dkt. 90 at 2-3.

Columbia must demonstrate that it faces imminent, irreparable harm. A mere possibility of irreparable harm will not suffice. *Caribbean Marine Services Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988). Irreparable harm is harm that is not compensable by monetary damages or equitable legal remedies. *Los Angeles Memorial Coliseum Comm'n v. NFL*, 634 F.2d 1197, 1202 (9th Cir. 1980) (monetary injury not normally considered irreparable); *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992) ("preliminary injunction must be the *only way* of protecting the plaintiff from harm").

The fourteen-month delay between the initiation of these proceedings and the pending motions is not determinative. Delay is "but one factor to be considered by a district court in its analysis of irreparable harm." *Hybritech Inc. v. Abbott Laboratories*, 849 F.2d 1446, 1457 (Fed. Cir. 1988). Besser appears to have been less than forthcoming in interactions with Columbia. Dkt. 71 at 4. Given these circumstances, Columbia's delay in requesting a preliminary injunction does not cast doubt on the imminent or irreparable nature of the harm it alleges.

Columbia put forth largely unsupported assertions of irreparable harm. In *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142 (Fed. Cir. 2011) Bosch introduced evidence of direct competition in specific market segments, loss of market share and access to potential customers, and Pylon's inability to satisfy a judgment that might be entered against it. *Id.* at 1152. Bosch discussed specific evidence of direct competition between it and Pylon, including evidence that it lost the business of one of the largest participants in the market to Pylon. *Id.* at 1153. In total, Bosch introduced nineteen specific instances of competition between the parties. *Id.*

By comparison, Columbia made an extremely limited, theoretical showing of irreparable harm. Columbia discussed the market alleging that the concrete products industry is small with only eight to ten competitor companies. Columbia stated that only one company—Besser—competes directly against Columbia using Columbia's patented technology. Dkt. 87 at 10. Columbia infers that each sale made by Besser is a sale lost by Columbia. *Id.* Columbia's showing falls far short of that put forth in *Bosch*.

Columbia alleges that Besser is unable to satisfy a judgment entered against it. Bosch also argued that Pylon's inability to satisfy a judgment favored holding Bosch was likely to suffer irreparable harm. 659 F.3d at 1153-54. In *Bosch*, because the litigation was bifurcated such that damages would be assessed in later proceedings, Bosch was unable to gain evidence of Pylon's financial position. Circumnavigating this evidentiary hurdle, Bosch presented specific evidence of Pylon's financial viability. Bosch submitted a "Risk Management Report" which categorized Pylon in the 49th percentile nationally of "Financial Stress" and called it a moderate risk of severe financial stress such as bankruptcy. *Id.* Bosch also presented a public filing showing that Pylon's parent company had recently taken a large loan at a high interest rate. *Id.*

Columbia similarly contends it is unable to gain access to evidence of Besser's financial position. Dkt. 87 at 11. Columbia relies on "rumors" and attorney statements that Besser laid off staff over the past few years. Dkt. 69 at 17 (citing Aaseth Decl. Dkt. 70 at 4). Though Bosch also faced difficulties marshalling evidence to demonstrate irreparable harm, it presented significantly more concrete evidence than Columbia set forth.

Based on this limited showing of irreparable harm, Columbia has not shown it is *likely* to suffer irreparable harm in the absence of an injunction. As a result, the Court will not delve into the adequacy of available remedies.

**C. Columbia Has Not Established Equitable Entitlement Sufficient to Justify an Injunction.**

"Balancing the equities is within the discretion of the District Court." *Atlas Powder Co. v. Ireco Chemicals*, 773 F.2d 1230, 1234 (Fed. Cir. 1985). Both Columbia and Besser maintain that the balance of hardships favors it. Columbia contends it is irreparably harmed as discussed above, it has to compete with its own patented inventions, and it expends more resources and suffers further harm as a result of Besser's disingenuous litigation tactics. Dkt. 69 at 18-19.

Besser asserts that Columbia has suffered no demonstrated harm. It notes that the SERVOPAC is its flagship product and is central to its continued success as a company. Dkt. 83 at 24-25. Further, the allegedly infringing aspects of its SERVOPAC machine are comparatively small pieces. Therefore, enjoining sale of the whole machine because of minor infringing elements would be like "enjoining the sale of a new line of [Mercedes] cars because of a dispute about ownership of the valve stem on the tire." Id. at 26.

The SERVOPAC is Besser's flagship product. In a tough economy, enjoining a company from producing its primary product could jeopardize its continued viability. This full stop injunction on Besser's flagship product potentially burdens Besser greatly.

On the other hand, if the SERVOPAC infringes, Columbia has been competing with its own technology for the past four years. On balance, improper competition seems a lighter burden on Columbia than a full stop of the SERVOPAC would be on Besser.

The balance of equities shows that the potential burden of an injunction on Besser is at least equal to the burden that improperly denying relief would be on Columbia. Therefore, this factor does not favor granting an injunction.

**D. Columbia Has Not Established that an Injunction Is in the Public Interest.**

The parties cite different competing public-interest issues: Columbia cites the right to exclude; Besser the right to free and open competition. Those interests are at odds in any patent case. Neither party cites any critical public health or safety interest advanced by entering or denying the injunction. This factor is therefore neutral.

### III. CONCLUSION

Columbia has not shown it is likely to succeed on the merits. Further, it has made only a limited showing of irreparable harm. The balance of equities and public interest factors are basically neutral in this case.

For these reasons, the Court **ORDERS** that Columbia's motions for a preliminary injunction and temporary restraining order are **DENIED**. (Dkts. #69, 72.)

DATED this 5th day of April, 2012.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE